IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JAMES D.,

              Plaintiff,

    v.                                  Civil Action No.
                                          8:20-CV-1544 (FJS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF N.N.Y.       ADAM T. DeFAYETTE, ESQ.
100 Court Street
Plattsburgh, NY 12901

FOR DEFENDANT

SOCIAL SECURITY ADMIN.           JAMES J. NAGELBERG, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which he has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend that this matter be remanded to the Commissioner for further proceedings.

I.      BACKGROUND

Plaintiff was born in May of 1973, and is currently forty-eight years of age. He was thirty-nine years old at his alleged onset date of disability of July 12, 2012, and forty-five years old at the time of his application for benefits in September 2018. Plaintiff stands six-foot and one inch in height, and weighed between approximately two hundred and twenty-five and two hundred and fifty pounds. Plaintiff lives by himself, but has a girlfriend. He has a high school education and previously worked as a corrections officer.

Physically, plaintiff alleges that he suffers from diabetes and pain in his neck and lower back. Mentally, plaintiff alleges that he suffers from depression, anxiety, and posttraumatic stress disorder ("PTSD"). These impairments cause hypervigilance, nightmares, anxiety, and difficulty

accomplishing daily tasks.

## II. PROCEDURAL HISTORY

### A. Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on September 18, 2018. In support of those applications, he alleged a disability onset date of July 12, 2012, and claimed to be disabled based on bulging discs in his lower back and neck, instability in his left ankle, a ruptured acromioclavicular ligament in his right shoulder, diabetes, and severe depression and anxiety.

A hearing was conducted on October 18, 2019, by ALJ David F. Neumann, to address plaintiff's application. Following that hearing, ALJ Neumann issued an unfavorable decision on December 31, 2019. That opinion became a final determination of the agency on October 13, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

### B. The ALJ's Decision

In his decision, ALJ Neumann applied the familiar, five-step sequential test for determining disability. At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period. At step two, ALJ Neumann found that plaintiff suffers from severe

impairments that impose more than minimal limitations on his ability to perform basic work functions, including cervical and lumbar spondylosis, obesity, right shoulder AC separation, asthma, a depressive disorder, and a social anxiety disorder.

At step three, ALJ Neumann examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 1.04, 3.03, 12.04, and 12.06.

ALJ Neumann next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of sedentary work,[1] as defined by the controlling regulations, with the following exceptions:

> the claimant can only lift/carry 5 pounds frequently,

---

[1] By regulation, sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

and 10 pounds occasionally. He is limited to standing/walking for a total of 2 hours and sitting for a total of 6 hours, in an 8-hour workday. The claimant can push/pull occasionally with his right arm, in front, laterally, or overhead, within the aforementioned weight restrictions. He should avoid concentrated exposure to pollutants (dusts, fumes, gases) and temperature extremes. The claimant is limited to occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching or crawling. He is limited to occasional interaction with the public.

At step four, ALJ Neumann concluded that plaintiff is unable to perform the demands of any of his past relevant work based on his RFC. Proceeding to step five, the ALJ consulted a vocational expert and found that, pursuant to the vocational expert's testimony, plaintiff remains capable of performing "representative occupations" such as call out operator and surveillance system monitor. The ALJ noted that he had determined that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT") concerning those occupations. Based upon these findings, ALJ Neumann concluded that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on December 11, 2020.[2] In support

---

[2]   This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for

of his challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ's step five finding is not supported by substantial evidence because, contrary to the ALJ's assertion, the vocational expert actually testified that an individual with the plaintiff's RFC *could not* perform work as a surveillance system monitor as that job is actually, generally performed in the vocational expert's own experience, and the ALJ failed to acknowledge this deviation in the vocational expert's testimony from the information contained in the DOT or to explain why he appears to have rejected the vocational expert's testimony in favor of the DOT; (2) had the ALJ not inappropriately included surveillance system monitor to support his step five finding, the remaining position identified by the vocational expert – which the vocational expert explicitly testified was the *only* other job plaintiff could perform – does not exist in sufficiently significant numbers in the national economy to sustain the Commissioner's burden; and (3) this matter should be remanded with a directed finding of disability solely for calculation of benefits because it is clear based on the evidence in the record that plaintiff is disabled as a result of the RFC. In her response brief, the Commissioner concedes that the ALJ committed

---

judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. It should be noted that this case is somewhat unusual, in that both parties have moved for remand, albeit different forms of remand.

error at step five that requires remand, but argues that the remand should be for further proceedings rather than a directed finding of disability.

III.   DISCUSSION

   A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.

1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.      <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d),

9

416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

As was discussed above, plaintiff challenges only the ALJ's finding at

step five, arguing that the ALJ's finding is not supported by substantial evidence. Dkt. No. 10. The Commissioner acknowledges that the ALJ erred in making his step five finding and that remand is appropriate. The sole issue now before the court is whether that remand should be for calculation of benefits, as plaintiff argues, or instead for further administrative proceedings, as the Commissioner argues. Because further development of the record and elaboration by the ALJ would be warranted before a conclusive finding of disability can be made, I recommend that remand for further proceedings is the most appropriate course.

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405[g]). The Second Circuit indicated that, where there are gaps in the administrative record or the ALJ has applied an improper legal standard, remand for further development of the evidence is warranted. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted). Thus, remand for further administrative proceedings is the overwhelmingly preferred course where the administrative record contains gaps and further findings would "plainly help to assure the proper disposition" of the claim. *Glass v. Colvin*, 12-CV-

11

1332, 2014 WL 5361471, at *6 (N.D.N.Y. Oct. 21, 2014) (Young, J.) (citing *Butts*, 388 F.3d at 385); see also *Harry L. v. Comm'r of Soc. Sec.*, 18-CV-0282, 2019 WL 3937224, at *5 (N.D.N.Y. Aug. 5, 2019) (Baxter, M.J.) (noting that "[r]eversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for evidentiary proceedings would serve no useful purpose") (citing *Rosa*, 168 F.3d at 82-83).

At the hearing related to the administrative proceedings before the ALJ, in response to the ALJ's hypothetical question encompassing the restrictions in the RFC, vocational expert ("VE") David Festa testified that plaintiff would be unable to perform his past relevant work, and that, in terms of other jobs, he is capable of working in only "[v]ery limited unskilled sedentary jobs based on the occasional movement of the upper extremity." Administrative Transcript ("AT") at 57.[3]  VE Festa testified that plaintiff could perform the job of call out operator, of which 5,876 such occupations exist.  *Id.*  VE Festa then testified that "[t]hat would be the only job I could identify in the unskilled, sedentary area, You Honor."  *Id.*

The ALJ next questioned VE Festa whether a person limited to the same hypothetical restrictions could perform the job of surveillance system

---

[3]   The Administrative Transcript, found at Dkt. No. 9, will be cited as "AT __."

monitor.  *Id.*  VE Festa answered that, "[a]s defined in the Dictionary of Occupational Titles I would say yes," but he qualified that statement by continuing, "[h]owever, it has been my experience that most surveillance system monitors are cross-trained to do security guard work which is an exertional level of light and a semiskilled level."  AT 57-58.  VE Festa provided more information about how surveillance system monitor jobs are actually performed, in his experience, which is different than as described in the DOT.  AT 58.  The ALJ then asked, "Okay, so yes per the DOT but would that be in your personal experience would that be a yes or a no?" to which VE Festa responded, "It would be a no because that's why I didn't include it."  AT 58-59.

 Despite VE Festa's clear testimony that it was his professional opinion that a person with the limitations included in the RFC could not perform the job of surveillance system monitor as that job is performed in the modern workplace, the ALJ found in his decision that (a) VE Festa had testified that plaintiff could perform the job of surveillance system monitor, and (b) VE Festa's testimony was consistent with the information in the DOT.  AT 21.  Thus, without any explanation, the ALJ both ignored the fact that VE Festa's testimony was inconsistent with the DOT and completely failed to explain why he chose to rely on the information in the DOT over

13

VE Festa's testimony.

Although the Commissioner is correct that the ALJ is entitled to rely on the DOT over the contrary testimony of a VE where such reliance is supported by substantial evidence, there appears to be very little reason to suggest that it was proper for the ALJ to do so in this case.  Indeed, plaintiff cites to a 2016 vocational study conducted regarding the performance of the job of surveillance system monitor in the modern economy that tends to corroborate VE Festa's testimony that actual performance of that job generally requires abilities in excess of what is described by the DOT.[4] The Commissioner argues that the court may not consider this study because the DOT is a promulgated policy, while a research study is not, citing *Waldvogel v. Comm'r of Soc. Sec.*, 16-CV-0868, 2017 WL 3995590, at *14 (N.D.N.Y. Sept. 11, 2017).  Dkt. No. 15, at 9.  However, the situation in this case is distinguishable from that presented in *Waldvogel*, in that VE Festa provided testimony that is generally consistent with that study.  *See Waldvogel*, 2017 WL 3995590, at *14 (noting that the plaintiff was arguing that the court should consider a vocational study that was contrary to both the DOT and the VE's testimony, but finding that it should not consider that study given that there was no inconsistency between the DOT and the VE's

---

[4]   As plaintiff notes, the DOT was last updated in 1991.

testimony and therefore no reason to rely on a study over more proper vocational evidence). Specifically, although VE Festa did not testify that *no* surveillance system monitor jobs can be performed at the sedentary unskilled level – the conclusion that appears to be suggested by the research study – his testimony makes clear that the number of available positions in that job in the national economy would be reduced by his conclusion, and likely significantly given VE Festa's testimony that, in his experience, "most" surveillance system monitor positions involve performance of work that is light and/or semiskilled in nature. AT 57-58. Because the number of jobs testified to by VE Festa – 5,876 for the call out operator position and 6,689 for the surveillance system monitor position – is already straddling the borderline of what constitutes a significant number in the national economy, VE Festa's qualification that "most" of that amount for the surveillance system monitor positions would be precluded by the limitations in the RFC, although inexact, would appear to suggest that an insufficient number of jobs would exist in the national economy, even if it was proper for the ALJ to include surveillance system monitor as a job plaintiff could perform in such a reduced capacity. The vocational study reinforces VE Festa's testimony and strengthens my conclusion that there is not an apparent legitimate reason based in substantial evidence for the

ALJ's reliance instead on the DOT over VE Festa's testimony in this case.[5]

VE Festa's relatively clear testimony contradicts many of the ways the Commissioner argues the record would need to be developed in the eventual remand.  His testimony is clear, for example, that, in his experience, plaintiff cannot perform work as a surveillance system monitor, and that the only sedentary unskilled job plaintiff can perform exists in numbers in the national economy that the Commissioner concedes are insufficient to meet the Agency's burden at Step Five.  However, despite this testimony, I find that there remains one issue for which further development of the record would serve a useful purpose.  Although VE Festa provided numbers for the job of call out operator in the "national" economy that would be insufficient, he did not provide any testimony regarding local or regional numbers of that job.  The regulations indicate that work will be considered to exist in the national economy in sufficient numbers to support a finding of not disabled where "it exists in significant numbers either in the region where you live *or* in several other regions of the country."  20 C.F.R. §§ 404.1566(a), 416.966(a).  Accordingly, a job

---

[5]  Although VE Festa's testimony appears sufficiently clear to support that significant numbers of jobs do not exist in the national economy, because I recommend that this matter be remanded for further proceedings, the ALJ should be provided an opportunity to clarify any relevant testimony related to the surveillance system monitor and provide an explanation as to why his determination is supported by substantial evidence should he still choose to rely on the DOT over VE Festa's testimony.

16

that does not exist in significant numbers broadly across several regions of the country may, in some circumstances, exist in significant numbers in the region where the claimant lives.  Although courts have generally found no requirement to adduce evidence regarding local or regional job numbers where there is evidence that the numbers in several regions of the country are sufficient, *see Sontz v. Colvin*, 15-CV-0708, 2016 WL 4444876, at *7 (N.D.N.Y. Aug. 23, 2016) (Suddaby, C.J.), such local or regional numbers have been found to be important where the "national" numbers are insufficient to sustain the Commissioner's burden.  *See e.g., Hamilton v. Comm'r of Soc. Sec.,* 105 F. Supp. 3d 223, 232 (N.D.N.Y. 2015) (Suddaby, J, Baxter, M.J.) (declining to remand for solely calculation of benefits where it was unclear whether the nationwide numbers of jobs would be sufficient to support the ALJ's step five finding, and the VE did not discuss statewide numbers related to the identified jobs, noting that "[w]hile the state-wide numbers also may be insufficient, this court cannot make that assumption").

     Similarly in this case, although it is likely that the local or regional numbers of the job of call out operator would be insufficient to sustain the Commissioner's burden, that is a fact that must be developed by the Agency and considered by the ALJ.  I therefore respectfully recommend

17

that this matter be remanded for further proceedings to (1) solicit additional testimony from VE Festa regarding local and regional numbers associated with the job of call out operator, and (2) analyze and reconcile the inconsistency between the VE's testimony and the DOT, and, in the event the ALJ again chooses to rely on the DOT over the testimony of VE Festa regarding the job of surveillance system monitor, provide an explanation as to why that finding is supported by substantial evidence.

## IV.  SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings (Dkt. No. 15) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be GRANTED in part and DENIED in part, and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this this Order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 7, 2022
Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge